DAVID S. HEAD, No. 13237
HEAD LAW, PLLC
111 E. 5600 S., Ste. 100
Murray, UT 84107
Telephone: (801) 691-7511
Facsimile: (801) 691-7512
dhead@headlawusa.com
*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| CYBELE BLOOD, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>ACADIA HEALTHCARE COMPANY, INC., a Delaware corporation; PHC OF UTAH, INC., a Massachusetts corporation, dba HIGHLAND RIDGE HOSPITAL,<br><br>    Defendants. | **COMPLAINT**<br><br><br>Civil No. 2:23-cv-00329-TC<br><br><br>Judge: Tena Campbell |

COMES NOW Plaintiff, by and through counsel, hereby alleges and complains of

the following:

## **PARTIES & JURISDICTION**

1. Plaintiff Cybele Blood is a resident of Salt Lake County, Utah.

2. Defendant, Acadia Healthcare Company, Inc. (Acadia), is a Delaware corporation.

3. Defendant, PHC of Utah, Inc. (PHC), is a Massachusetts corporation.

4. Defendants are doing business in the State of Utah as Highland Ridge Hospital.

5. Jurisdiction in this Court is proper under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(4).

6. The events upon which the causes of action are based took place primarily in Salt Lake County, Utah. Accordingly, venue is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 125.

## GENERAL ALLEGATIONS

7. Around June 7, 2014, Defendants hired Plaintiff as an employee.

8. Plaintiff has worked for Defendants as a utilization review coordinator/assistant or as a therapist.

9. Defendants have more than fifteen (15) employees.

10. Around May 25, 2018, Plaintiff was physically attacked by one of Defendant's patients. Defendants' failure to follow safety protocols and doctor's orders for this patient's care led to the attack.

11. Plaintiff was injured as a result of the above attack. This attack was very traumatic for Plaintiff.

12. As a result of Plaintiff's injuries from the above attack, Plaintiff was diagnosed with post-traumatic stress disorder (PTSD) and also other medical conditions.

13. PTSD constitutes a disability, as that term is defined in the ADA, § 2 U.S.C. § 12102.

14. Around June 2018, Plaintiff asked Defendants for reasonable accommodations for her employment. More specifically, Plaintiff requested that she not work with patients known for violence or that have a significant risk of violence in the facility. Defendants approved these accommodations.

15. Around April 2019, Defendant's human resources director, Natalie Kellett, notified Plaintiff that Defendants could no longer provide her with her requested accommodations.

16. Defendants failed to provide an explanation for revoking Plaintiff's accommodations.

17. Defendants did not have a legitimate reason for revoking Plaintiff's accommodations. In fact, Defendants were able to continue with these accommodations without creating undue hardship for Defendants.

18. Around May 2019, Plaintiff requested accommodations from Defendants. More specifically, Plaintiff requested that she not work with patients known for violence or that have a significant risk of violence in the facility.

19. Upon receipt of the requested accommodations, and Plaintiff's submission of supporting medical documentation, Defendants told Plaintiff that she would have to provide additional medical documentation for her request for accommodation.

20. Defendants also told her that she did not need accommodations to perform her job duties and responsibilities. Defendants directed Plaintiff to perform her job duties and responsibilities without the accommodations she requested.

21. The following day, in retaliation for her requests for accommodations, Defendants took away Plaintiff's office, which accommodated her disability.

   (a) Defendants also disconnected her business telephone line that Plaintiff had had for four (4) years without any issue. Defendants would also not forward phone calls made to Plaintiff.

   (b) Defendants also removed Plaintiff's independent access to patient medical records. Plaintiff needed access to these records to perform her job duties and responsibilities. Other employees continued to have access to these records.

22. Around a week later, Defendants received medical documentation from a physician that confirmed Plaintiff's disability, her diagnosis of PTDS, and her need for an accommodation.

23. Around June 2019, Plaintiff asked Defendants again for reasonable accommodations.

24. Defendants failed to contact Plaintiff's supervisor or superiors regarding Plaintiff's accommodation request. At that time, Defendants denied that Plaintiff had ever submitted a request for accommodation.

25. Defendants did not respond to Plaintiff's request for reinstatement of her accommodations until around November 2019 when Plaintiff's supervisor reminded Defendants regarding Plaintiff's request.

26. Upon information and belief, Defendants had purposely ignored Plaintiff's request for accommodation.

27. In 2019, Defendants' chief executive officer (CEO) questioned why they should keep Plaintiff as an employee due to her request for accommodations. Defendants' CEO also did not like Plaintiff's requests for accommodation.

28. In 2019, Defendants treated Plaintiff differently from other employees due to Plaintiff's request for accommodation and her disability. For example, Defendants denied Plaintiff shift opportunities that were available for other employees.

29. Around January 28, 2020, Defendants denied Plaintiff's request for reasonable accommodation.

30. Defendants told Plaintiff that she did not need accommodations to perform her job duties and responsibilities. Defendants directed Plaintiff to perform her job duties and responsibilities without the accommodations she requested. Defendants also told Plaintiff that if she did not do her work without the accommodation, they would fire her.

31. Around February 2020, Plaintiff contacted Defendants asking them to grant her accommodations after Defendants' denial. Defendants never responded to this request.

32. Defendants told Plaintiff that they denied Plaintiff's request for accommodation because it allegedly conflicted with Plaintiff's job duties and responsibilities. However, this is not true. Defendants had previously approved the request for accommodations for Plaintiff without it causing them undue hardship, and Plaintiff had been able to perform the essential functions of her job without issue.

33. Defendants had also granted similar requests for accommodations to Defendants' other employees who did not have a disability.

34. Around May 2020, Defendants also:

    (a) Questioned Plaintiff about her attendance at meetings;

    (b) Questioned Plaintiff about why she was checking emails; and

    (c) Questioned Plaintiff about competition of paperwork for an intern that Plaintiff had supervised

35. In 2020, Defendants significantly decreased Plaintiff's hours at work due to her requests for accommodations or due to her disability. Defendants then stopped offering her available shifts as they had done previously.

36. Defendants had need for therapists, but purposely did not offer her shifts due to her requests for reasonable accommodations or due to her disability.

37. On May 23, 2020, Defendants' clinical director, Jarad Ringer, told Plaintiff that she was not able to contact a private client. Defendants did not have any legitimate reasons for prohibiting Plaintiff from contacting a private client.

38. Mr. Ringer then sternly told Plaintiff that she needed to meet with him and human resources about her work status. Plaintiff asked Mr. Ringer what the reason for the meeting was. Mr. Ringer told Plaintiff that he could not talk with Plaintiff about it without human resources being present, and that a meeting was scheduled for the first week of June.

    (a) Based upon another employee's communications with Defendants' management, the other employee told Plaintiff that it appeared that Defendants' management were going to terminate Plaintiff.

39. Around spring 2020, Defendants' chief executive officer, Michelle Neville, and Mr. Kellett spoke negatively about Plaintiff and her requests for accommodations. Defendants' management continued to make these negative comments about Plaintiff.

40. Due to Defendants' ongoing poor treatment of Plaintiff, Defendants' intention to terminate Plaintiff, and Defendants' failure to engage in good faith with Plaintiff regarding her request for accommodations, Plaintiff felt that she had no other choice than to resign.

41. Plaintiff submitted her resignation to Defendants effective June 1, 2020.

42.     Defendant's discrimination, retaliation, and termination of Plaintiff has caused her to sustain special damages, consequential damages, general damages, and attorney's fees and costs.

### FIRST CAUSE OF ACTION – Discrimination in Violation of the ADA

43.     The preceding paragraphs are incorporated herein by reference.

44.     The Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, (ADA) prohibits discrimination against qualified individuals on the basis of a disability. The ADA imposes an obligation upon employers to accommodate the known disabilities of its employees.

45.     At all times relevant hereto, Defendants were aware of Plaintiff's disabilities.

46.     In the alternative, Defendants either had record of Plaintiff's impairment and disability or was regarded as being disabled by Defendants.

47.     At all times relevant hereto, Plaintiff was a qualified individual with a disability. Plaintiff could perform the essential functions of her employment with or without a workplace accommodation.

48.     Defendants' failure to engage Plaintiff in an interactive process, their denial of Plaintiff's accommodation requests, and their other adverse actions constitute discrimination in violation of the ADA, 42 U.S.C. § 12112(b).

49.     Defendants constructively terminated Plaintiff's employment because of her disabilities or because she had requested accommodations for her disabilities. Accordingly, Defendants' constructive termination of Plaintiff's employment also constitutes discrimination in violation of the ADA.

50.     Defendants applied standards of conduct and performance to Plaintiff that it did not apply to her non-disabled comparator employees, which serves as further evidence of discrimination in violation of the ADA.

51.     Defendants' violations of the ADA have directly and proximately caused Plaintiff to suffer substantial past and future economic losses, including lost wages, lost employment benefits, and harm to Plaintiff's future earning capacity.

52.     Defendants' violations of the ADA have also directly and proximately caused Plaintiff to suffer humiliation, pain, suffering, and emotional distress.

53.     Plaintiff seeks recovery of her pecuniary and non-pecuniary damages in an amount to be determined at trial.

54.     Plaintiff also seeks recovery of her reasonable attorney's fees, court costs, and litigation expenses.

55.     Defendants' unlawful conduct was willful and malicious and manifested a knowing and reckless indifference toward, and disregard of, Plaintiff's rights. Accordingly, an award of punitive damages should be entered against Defendants to deter them and others from committing similar conduct in the future.

## SECOND CAUSE OF ACTION – Retaliation in Violation of the ADA

56. The preceding paragraphs are incorporated herein by reference.

57. The ADA, 42 U.S.C. § 12203, prohibits retaliation against an employee who has engaged in protected activity under the ADA.

58. Plaintiff engaged in protected activities by requesting workplace accommodations, and by complaining that she was being subjected to unlawful discrimination and harassment.

59. Defendants retaliated against Plaintiff because she engaged in protected activities in violation of the ADA.

60. Defendants retaliated by taking Plaintiff's office and business telephone lines away, by treating her differently than other employees, removing Plaintiff's independent access to patient medical records, lowering and terminating her work hours, and by constructively terminating Plaintiff's employment.

61. Defendants' unlawful retaliation has directly and proximately caused Plaintiff to suffer substantial past and future economic losses, including lost wages.

62. Defendants' unlawful retaliation has also directly and proximately caused Plaintiff to suffer humiliation, pain, suffering and emotional distress.

63. Plaintiff seeks recovery of her pecuniary and non-pecuniary damages in an amount to be determined at trial.

64. Plaintiff also seeks recovery of her reasonable attorney's fees, court costs, and litigation expenses.

65. Defendants' unlawful conduct was willful and malicious and manifested a knowing and reckless indifference toward, and disregard of, Plaintiff's rights. Accordingly, an award of punitive damages should be entered against Defendants to deter them and others from committing similar conduct in the future.

### THIRD CAUSE OF ACTION – Termination in Violation of the ADA

66. The preceding paragraphs are incorporated herein by reference.

67. Defendants discriminated against Plaintiff by constructively terminating her employment because she had a disability. This violates 42 U.S.C. 12112(a) which prohibits an employer from discharging an employee because of her disability.

68. Defendants' unlawful retaliation has directly and proximately caused Plaintiff to suffer substantial past and future economic losses, including lost wages.

69. Defendants' unlawful termination has also directly and proximately caused Plaintiff to suffer humiliation, pain, suffering and emotional distress.

70. Plaintiff seeks recovery of her pecuniary and non-pecuniary damages in an amount to be determined at trial.

71. Plaintiff also seeks recovery of her reasonable attorney's fees, court costs, and litigation expenses.

72.     Defendants' unlawful conduct was willful and malicious and manifested a knowing and reckless indifference toward, and disregard of, Plaintiff's rights. Accordingly, an award of punitive damages should be entered against Defendants to deter them and others from committing similar conduct in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court find that Defendants violated the ADA by discriminating against Plaintiff, retaliating against Plaintiff, and constructively terminating Plaintiff due to her protected activity and due to her disabilities, and that it enter the following damages and relief:

1. Special damages,
2. Consequential damages;
3. Incidental damages;
4. General damages;
5. Punitive damages;
6. Injunctive relief;
7. Reinstatement of employment;
8. Plaintiff's attorney's fees, costs, and litigation expenses; and
9. Any other relief the Court deems just and equitable or that is permitted by law.

DATED this 23 day of May, 2023.

                                        HEAD LAW, PLLC

                                        */s/ David S. Head*

                                        _____
                                        David S. Head
                                        Attorney for Plaintiff